UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JONATHON MIRANDA AND SARAH MIRANDA,

Plaintiffs,

v.

PALO ALTO UNIFIED SCHOOL DISTRICT,

Defendant.

Case No. 25-cv-06745-NC

**ORDER GRANTING IN PART AND DENYING IN PART THE DISTRICT'S APPEAL OF THE OFFICE OF ADMINISTRATIVE HEARINGS' DECISION**

Re: ECF 53

Plaintiffs Jonathon and Sarah Miranda (husband and wife) filed this action on behalf of their minor child, J.M., against the Palo Alto Unified School District seeking judicial review of an administrative decision under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400, *et seq.*

Before the Court is the District's appeal of the Office of Administrative Hearings' decision. ECF 53. The District contends the administrative law judge erred in finding that the District's individual education plans (IEPs) were predetermined so denied student a free appropriate public education (FAPE). This Order assumes the reader's familiarity with the facts and arguments by the parties.

For the reasons below, the Court GRANTS in part and DENIES in part the District's appeal as follows:

- GRANTS the appeal as to issues 2(a)–(c), 7(a), 13(a)–(b); and

- DENIES the appeal as to issues 4(a), 5(a), 14(a), 8(a)–(b).

## I. BACKGROUND

By way of brief summary, J.M. is eligible for special education and related services under the categories of Autism and Other Health Impairment. Administrative Record (AR), 542. J.M. was enrolled at Hope Technology School, a private school. *Id.* at 1934.

In March 2023, Plaintiffs sent the District an email stating that they enrolled J.M. for the 2023–2024 school year and requested a "comprehensive assessment" to help J.M. "transition to a new school and for his teachers to know his skills and deficits." AR 1195. Plaintiffs included eight areas for assessment, including speech and language, occupational therapy, and psychoeducation. *Id.* at 1195–96. The District completed the assessments. AR 3359.

In August 2023, the District emailed Plaintiffs an interim placement for J.M. at Jane Lathrop Stanford Middle School (JLS). AR 1678. Plaintiffs responded that they had concerns about implementing the interim IEP. *Id.* Later that month, the District conducted the IEP team meeting with Plaintiffs and made an offer of FAPE at JLS. *Id.* at 3575. Then, Plaintiffs requested the assessment protocols from J.M.'s reevaluation. AR 3580. The District provided assessment protocols from the speech and language and occupational therapy assessors, but not others. *Id.* at 3585. In October 2023, displeased with the District's assessments, Plaintiffs requested independent educational evaluations (IEEs) to evaluate J.M.'s needs. *Id.* at 1934–39.

In September 2024, Plaintiffs requested the District conduct a transition assessment of J.M. *Id.* at 3601. The District completed an informal assessment. *Id.* In December 2024, the District held another IEP team meeting and presented Plaintiffs with a FAPE offer at Henry M. Gunn High School (Gunn). *Id.* at 3607.

## II. LEGAL STANDARD

When parties have no more evidence to offer in a civil suit seeking review of an Office of Administrative Hearings decision, as is the case here, a Court may treat a motion for summary judgment as an "appeal from an administrative determination, not a summary

judgment." *Capistrano Unified Sch. Dist. v. Wartenberg by and Through Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995).

In an action challenging an administrative decision under the IDEA, the district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). Thus, "[j]udicial review in IDEA cases 'differs substantially from judicial review of other agency actions, in which courts are generally confined to the administrative record and are held to a highly deferential standard of review.'" *M.C. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1194 (9th Cir. 2017) (quoting *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471 (9th Cir. 1993)).

In assessing a challenge to an administrative decision, courts should give "due weight" to state administrative proceedings and must not "substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982). While the amount of deference that the court gives to the ALJ's findings is discretionary, it "increases where [the findings] are thorough and careful." *Capistrano*, 59 F.3d at 891 (internal citations omitted).

The burden of proof in IDEA appeal proceedings is on the party challenging the administrative ruling. *Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1103 (9th Cir. 2007) (citations omitted). The challenging party must show, by a preponderance of the evidence, that the hearing decision should be reversed. *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 438 (9th Cir. 2010) (citation omitted).

## III. DISCUSSION

### A. Issues (2)(a)-(c): Psychoeducation, Speech and Language, and Occupational Therapy Assessments

In March 2023, Plaintiffs requested a "comprehensive assessment" to help J.M. "transition to a new school and for his teachers to know his skills and deficits." AR 1195.

The ALJ determined that the District's assessments were inadequate because they lacked direct classroom observation and Plaintiff's "primary concern, known to [the District], was whether [J.M.] could successfully transition from the small campus and classes at Hope Technology . . . to a several times larger comprehensive public middle school and instruction in large general education classes." AR 3561–62. The ALJ reasoned that "[o]bservations of [J.M.]'s ability to stay emotionally regulated, communicate and interact appropriately with peers, and process sensory information in the classroom at Hope in circumstances comparable or analogous to those he might encounter on a large comprehensive campus would be critical to that determination." *Id.* at 3562.

In conducting a reevaluation, the public agency must "[u]se a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information about the child," but "[n]ot use any single measure or assessment as the sole criterion for determining . . . an appropriate educational program for the child." 34 C.F.R. §§ 300.304 (b)(1), (2). The IEP team and others must "[r]eview existing evaluation data on . . . [c]urrent classroom-based, local, or State assessments, and classroom-based observations." *Id.* §§ 300.305(a)(1)(ii). The personnel who assess the pupil shall prepare a written report of the results of each assessment, including "relevant behavior noted during the observation of the pupil in an appropriate setting." Cal. Educ. Code § 56327(c).

Plaintiffs did not inform the District about their class size and campus concerns until September 2023, after touring JLS's campus. AR 1919. The assessments were, in Plaintiffs' words, conducted to facilitate J.M.'s "transition to a new school and for his teachers to know his skills and deficits." AR 1195. The assessments were not to determine whether the school was of a size that seemed adequate to Plaintiffs. *Id.* Nor do the California or federal regulations require that assessors conduct direct classroom observations, as the ALJ admits. AR 3561. The assessors must "review existing evaluation data" including "classroom-based observations" and include "relevant behavior noted during the observation of the pupil in an appropriate setting." 34 C.F.R. §§ 300.305(a)(1)(ii); Cal. Educ. Code § 56327(c). The assessors did that— they spoke with

J.M.'s teacher and evaluated him themselves during their assessments. *See* AR 1063–64 (occupational therapy report included teacher's input regarding functional performance and sensory processing in classroom environment); 1079–1083 (speech and language assessment noting teacher's response to various questions); *id.* at 1099–1100, 1112, 1118, 1120–21 (psychoeducational evaluation incorporating teacher's reports of J.M.'s behaviors and skills).

The ALJ stated that it would be important to observe J.M.'s "ability to stay emotionally regulated, communicate and interact appropriately with peers, and process sensory information in the classroom at Hope in circumstances comparable or analogous to those he might encounter on a large comprehensive campus would be critical to that determination." AR 3562. Yet Hope is not a comparable or analogous campus to JLS, so observing J.M. there would not inform his ability to transition to a larger campus. Regardless, schools must "[n]ot use any single measure or assessment as the sole criterion for determining . . . an appropriate educational program for the child." 34 C.F.R. §§ 300.304 (b)(2). The ALJ did just that here by discrediting all three evaluations based on a "single measure" regarding classroom observations. Accordingly, the ALJ erred and the Court GRANTS the District's appeal on this issue.

**B. Issue 4(a): August 2023 Interim IEP**

In August 2023, the District emailed Plaintiffs an interim placement for J.M. at JLS. AR 1678. The ALJ found that the District was not legally required to provide an interim IEP because J.M. was transferring from a private to a public school between school years. *Id.* at 3573. So, the interim IEP was predeteremined because the District "did not develop the interim IEP in consultation with [Plaintiffs], did not review the IEP at an IEP meeting, and did not obtain [Plaintiff's] consent to the IEP." AR 3574.

"Each local educational agency must have an IEP in effect for each individual with exceptional needs within its jurisdiction at the beginning of each school year." AR 3563 (citing Cal. Educ. Code § 56344(c); 20 U.S.C. § 1414(d)(2)(A); 34 C.F.R. § 300.323(a)). "The IEP must be reasonably calculated to provide the student a FAPE based on the

information available to the district." *Id.* (citing *Adams v. State of Oregon*, 195 F.3d 1141, 1149 (9th Cir. 1999)) (citation omitted).

While the Court recognizes the District's efforts to ensure an IEP was in place at the beginning of the school year, it cannot understand why the District made no attempt to meet with J.M.'s parents first. Though it was not feasible to conduct the full IEP meeting by the first day of school, there is no reason why a preliminary meeting with parents to discuss an interim IEP did not occur. Plaintiffs indicated interest in such before the District sent the interim IEP. AR 1669–70 (Plaintiffs' August 4, 2023, email stating that an IEP meeting was needed to understand J.M.'s needs). As such, the District determined the interim placement without meaningful dialogue, so it was predetermined. *Z.F. v. Ripon Unified School Dist.*, No. 11-cv-02741-KJM-GGH, 2013 WL 127662, at *6 (E.D. Cal. 2013).

The District argues that it utilized input from Plaintiffs obtained through phone calls and emails to develop the interim IEP. ECF 53 at 16. The District also claims that "[t]estimony before the ALJ reflected that the Parents' input was sought as to the contents of the interim IEP and that the District considered and implemented that input," but does not cite the record for this assertion. *Id.* The District's reply brief points the Court to AR 1422–1578. ECF 58 at 7. While the Court diligently searched the cited 156 pages and scoured the 6,000 some page record for this information, it could not locate it. The burden of proof here is on the District, as the party challenging the administrative ruling. *Hood*, 486 F.3d at 1103. The District has failed to show, by a preponderance of the evidence, that the hearing decision should be reversed. *J.W.*, 626 F.3d at 438.

The District's cited authorities do not alter this analysis. *See A.M. ex rel. Marshall v. Monrovia Unified Sch. Dist.*, 627 F.3d 773, 778–80 (9th Cir. 2010) (finding interim IEP appropriate where school held meeting with parents before semester started); *N.B. v. Hawaii*, No. 13-cv-00439 LEK, 2014 WL 3663452, at *4 (D. Haw. July 21, 2014) (holding that school did not violate IDEA by refusing to provide a FAPE before student's enrollment). Accordingly, the Court DENIES the District's appeal on this issue.

### C. Issue 5(a) and 14(a): Predetermined August 2023 and December 2024 IEP Offers

In August 2023 and December 2024, the District conducted IEP team meetings with Plaintiffs. AR 3575, 3605. The ALJ found the District denied J.M. a FAPE by predetermining its IEP offers before both meetings. *Id.* at 3575, 3612. The ALJ noted that Plaintiffs "did not believe [J.M.] would be able to transition successfully from Hope Technology to the much larger campus and classes" at JLS or Gunn. *Id.* at 3575–76, 3612. Yet, the District remained unwilling to consider or discuss other placement options for J.M. *Id.* at 3576, 3612.

"Predetermination occurs when an educational agency has made a determination prior to the IEP meeting, including when it presents one educational placement option at the meeting and is unwilling to consider other alternatives." *Z.F.*, 2013 WL 127662, at *6 (citation omitted). A school district may not arrive at an IEP team meeting with a "take it or leave it" offer. *J.G. v. Douglas County School Dist.*, 552 F.3d 786, 801, n.10 (9th Cir. 2008); *Z.F.*, 2013 WL 127662, at *6.

The Court agrees with the ALJ. While the District and other IEP team members stressed that the IEP was "just a proposal" and Plaintiffs "would have to sign off on it before it becomes a thing," Plaintiffs were given no other placement options. AR 3081–82. While the District's rhetoric suggested openness, the District has not presented evidence that it considered any other alternatives to the FAPE offered. *Id.*; *see also id.* at 3082 (occupational therapist "recommending consultative services" and stating that "[w]e're always available to collaborate"). A school district must consider an appropriate continuum of alternative placements, including at least "instruction in regular classes, special classes, special schools, home instruction, and instruction in hospitals and institutions." 34 C.F.R. § 300.115(b)(1). The District violated IDEA by developing the IEP before the meeting without considering the continuum of placements and "simply present[ing] the IEP to the [Plaintiffs] for ratification." *Ms. S. v. Vashon Island Sch. Dist.*, 337 F.3d 1115, 1131 (9th Cir. 2003). Accordingly, the Court DENIES the District's

United States District Court
Northern District of California

appeal on this issue.

**D. Issue 7(a): Requested Assessment Protocols**

After the August 2023 IEP meeting, Plaintiffs requested the assessment protocols from J.M.'s reevaluation. AR 3580. The District provided assessment protocols from the speech and language and occupational therapy assessors, but not others. *Id.* at 3585. In particular, Plaintiffs sought the psychoeducational assessment protocol from school psychologist Christina Keefe. *Id.* at 3586. At the hearing before the ALJ, Keefe testified that she had provided the assessment protocols to the District. AR 4851.

The District "does not dispute that the records in question must be provided to [Plaintiffs] upon request, where those records are in the District's possession." ECF 58 at 9; *see N.F. v. Antioch Unified Sch. Dist.*, No. 19-cv-02453-KAW, 2021 WL 1746366, at *7 (N.D. Cal. Mar. 30, 2021), *aff'd sub nom. N.F. by & through Flyte v. Antioch Unified Sch. Dist.*, No. 21-cv-15781, 2022 WL 1301882 (9th Cir. May 2, 2022) ("To be educational records, the District would have needed to have possession of [the assessment protocols] at some point in time.").

The District does dispute whether Keefe actually provided the District with her protocol. ECF 53 at 24–25. The District argues it cannot "prove a negative" because the protocol does not exist in its records. ECF 58 at 9. That argument is unpersuasive. The District could have provided testimony, for example, regarding their recordkeeping, or their search for Keefe's protocols.

The District contends that, even if it had failed to send Plaintiffs Keefe's protocols, it would amount to a minor procedural issue rather than denying J.M. a FAPE. ECF 53 at 24–25. The ALJ noted that failure to provide a parent with assessment related information may impede the parent's ability to participate in decision making. AR 3582. Yet those situations are far more extreme than what occurred here. In *Amanda J. ex rel. Annette J. v. Clark Cnty. Sch. Dist.*, the school provided the parents with a summary of the medical reports, but not the actual reports themselves which had indicated a possible early autism diagnosis. 267 F.3d 877, 892–93 (9th Cir. 2001). The *Amanda* court found that where

"the parents had no other source of information available to them" and the ensuing "failure to act upon early detection of the possibility of autism" amounted to denial of a FAPE. *Id.* at 893–94. Similarly, in *M.M. v. Lafayette Sch. Dist.*, the court found that the school denied student a FAPE where the parents were not given the student's complete data to evaluate the special education services received. 767 F.3d 842, 855–56 (9th Cir. 2014), *as amended* (Oct. 1, 2014). There, lacking the data, "the parents were struggling to decipher [the student's] unique deficits, unaware of the extent to which he was not meaningfully benefitting from the ISP, and thus unable to properly advocate for changes to his IEP." *Id.* at 856.

This is a minor procedural violation that does not rise to the level of denying J.M. a FAPE. This violation did not "result in the loss of educational opportunity, or seriously infringe the parents' opportunity to participate in the IEP formulation process, or that caused a deprivation of educational benefits." *N.B. v. Hellgate Elementary Sch. Dist., ex rel. Bd. of Directors, Missoula Cnty., Mont.*, 541 F.3d 1202, 1207 (9th Cir. 2008) (internal quotations and citations omitted). Plaintiffs had access to Keefe's complete evaluation and, though review of the underlying protocol may have aided their comprehension, it did not seriously impact their involvement in J.M.'s IEP. *See Amanda J.*, 267 F.3d at 892–93; *M.M.*, 767 F.3d at 855–56. Accordingly, the Court GRANTS the District's appeal on this basis.

### E. Issue 8(a)–(b): Due Process Hearing Request for IEEs

In October 2023, Plaintiffs requested IEEs to evaluate J.M.'s needs. AR 1934–39. Under 34 C.F.R. § 300.502(b)(2), if a parent requests an independent educational evaluation (IEE) at public expense, and the school district declines that request, the district must file a due process request "without unnecessary delay." When the parties continue to discuss and negotiate the provision of an IEE, there is no unnecessary delay in the school district waiting to file for a due process hearing until the parties reach a "final impasse." *L.C. by & through Cruz v. Alta Loma Sch. Dist.*, 849 F. App'x 678, 679–80 (9th Cir. 2021) (citation omitted).

The District argues there was no impasse, so it was not required to file for a due process hearing. ECF 53 at 25. The District points the Court to various email exhibits where the parties discuss potential IEE assessors, and coordinate paperwork and scheduling. AR 2015–54, 2080–99, 2167–69, 2177, 2222–46; 2708–2859. Yet, this evidence confirms the ALJ's finding that the parties were at an impasse as neither IEE was completed, despite nearly a year of negotiating. *See* AR 3841–42 (occupational therapy IEE not completed); 4536–39 (district did not deny IEE requests outright, but parents did not agree to reimbursement model for IEE). There is no other evidence in the record demonstrating that the parties continued to negotiate past September 2024, and the District does not point the Court to any. AR 2181–82, 2246. This is confirmed by a December 2024 District email which states that only J.M.'s IEE in psycho-education had been completed. AR 2852. At that point, the parties reached an impasse, and the District was required to file for a due process hearing. The District has failed to show, by a preponderance of the evidence, that the hearing decision should be reversed. *J.W.*, 626 F.3d at 438. Accordingly, the Court DENIES the District's appeal on this issue.

**F. Issue 13(a)–(b): Transition Assessment**

Plaintiffs requested a transition assessment in September 2024, when J.M. was not yet sixteen. AR 3601. The District did not provide a transition assessment, but an informal "transition inventory" which evaluated occupations J.M. might be interested in. *Id.* The ALJ determined that the District erred because, when Plaintiffs asked for the transition assessment, the District should have agreed and obtained parental consent, or provided written notice declining to conduct the assessment. *Id.* at 3606. Instead, the District conducted the informal assessment, which failed to evaluate several other areas for transition, without parental consent. *Id.*

34 C.F.R. § 300.320(b)(1)–(2) states that "when the child turns 16, or younger if determined appropriate by the IEP Team," the IEP must include goals based upon transition assessments and the services needed for the child to reach those goals. *See also* Cal. Educ. Code § 56320.

The Court agrees with the District that the ALJ misapplied the law. J.M. was not sixteen when his parents requested the transition assessment, and there is no evidence that the IEP team determined it was appropriate to conduct one. 34 C.F.R. § 300.320(b). The regulations do not provide for a third route to obtaining a transitional assessment—through unilateral parental request—which the ALJ fabricated here. *Id.* The ALJ does not cite any authority to support his interpretation. *See* AR 3601–07.

Though the special education teacher permitted the informal transition assessment, it is a stretch to interpret one teacher's assent as an IEP team determination that such an assessment was appropriate. AR 3604. The ALJ states as much. *Id.* ("While Student's IEP team clearly had the authority under the IDEA and Education Code to determine that it was appropriate to assess Student's need for transition goals and services even though he was less than 16 years old, [the special education teacher] did not involve the IEP team in the decision.")

Even assuming the special education teacher committed a procedural violation by failing to convene an IEP team meeting to discuss whether a transition assessment would be appropriate, this did not rise to the level of denying J.M. a FAPE. There is a reason the regulations require schools to conduct this assessment at sixteen. 34 C.F.R. § 300.320(b)(1)–(2). J.M. was not of age and there are no factors suggesting an early assessment was appropriate. Accordingly, the Court GRANTS the District's appeal on this issue.

**IV. CONCLUSION**

Accordingly, the Court GRANTS in part and DENIES in part the District's appeal as follows:

- GRANTS the appeal as to issues 2(a)–(c), 7(a), 13(a)–(b); and
- DENIES the appeal as to issues 4(a), 5(a), 14(a), 8(a)–(b).

The Court is not issuing judgment because this is not a final order and additional issues remain to be decided. *See* ECF 83 (Case Management Order).

**IT IS SO ORDERED.**

Dated: August 21, 2026

NATHANAEL M. COUSINS
Chief United States Magistrate Judge

United States District Court
Northern District of California